**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Nicholas Victor FLEMING, Jr., Defendant–Appellant.**

**No. 99–10324.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 27, 2000

Filed June 7, 2000

---

Marc C. Ament, Assistant Federal Defender, Fresno, California, for the defendant–appellant.

Jonathan B. Conklin, Assistant United States Attorney, Fresno, California, for the plaintiff–appellee.

Before: FLETCHER, ALARCON, and HAWKINS, Circuit Judges.

ALARCON, Circuit Judge:

Nicholas Victor Fleming, Jr., ("Fleming") appeals from a judgment of conviction under 18 U.S.C. § 1503. Fleming was sentenced to fifteen months' imprisonment after a jury found he endeavored to influence the Honorable Robert E. Coyle, a federal district judge, in the discharge of his duties in a civil case Fleming filed in the Eastern District of California. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and we affirm.

I

Fleming was a paralegal. He believed that the practice of law should not be limited to lawyers. On August 14, 1997, Fleming filed a civil action in the Eastern District of California that named as defendants the State Bar of California and the American Bar Association, among others (*"Fleming v. State Bar of California"*). In that action, Fleming alleged a number of constitutional and antitrust violations.

Judge Coyle was assigned to preside over Fleming's civil case. On a motion by the defendants, Judge Coyle dismissed the case on November 25, 1997, for failure to state a claim for which relief can be granted. In the same order, Judge Coyle denied Fleming's request for a change of venue. On December 5, 1997, Fleming filed a notice of appeal.

Thereafter, Fleming drafted a document that purported to be a $10,000,000 lien on real property owned by Judge Coyle and his wife, Faye Coyle, including their residence. On December 17, 1997, Fleming tried to file the lien with the office of the clerk of the court for the Eastern District of California. The staff allowed the document to be lodged but not filed with the court. Later that same day, Fleming and a friend drove to the Coyles' home in Fresno. The friend knocked on the door. When there was no answer, he left a copy of the lien in the Coyles' mailbox.

Upon receiving the lien later that day, Mrs. Coyle called Judge Coyle. He was in San Francisco for a meeting at the Ninth Circuit Executive's office. Judge Coyle had his office fax him a copy of the lien. Upon Judge Coyle's return to Fresno, he issued an order instructing the clerk's office not to file or certify the lien.

The record indicates that neither Judge Coyle nor the court staff who interacted with Fleming perceived him as physically threatening. Two FBI agents interviewed Fleming on January 21, 1998, at his home in Bakersfield. Fleming admitted having prepared the lien, lodging it with the court,

and causing it to be delivered to the Coyle home. Fleming asserted his belief that, under the common law, a litigant has the right to file a lien on the property of a judge who oversteps his authority. Fleming concedes in his brief to this court that no such right exists.

On May 14, 1998, Fleming was indicted on two counts of endeavoring to influence a judicial officer and aiding and abetting in violation of 18 U.S.C. §§ 1503[1] and 2.[2] On July 20, 1998, Judge Robert Whaley of the Eastern District of Washington was designated to preside over Fleming's criminal case.

On September 17, 1998, we affirmed Judge Coyle's dismissal of Fleming's civil case for failure to state a claim for which relief can be granted in *Fleming v. State Bar of California*, 163 F.3d 605.

On March 17, 1999, a jury found Fleming guilty of both counts of the indictment. In determining Fleming's sentence, the district court used an offense level of twelve, three levels below what was calculated in the presentence report. The dis-

trict court reasoned that aspects of Fleming's conduct were arguably protected by the First Amendment and concluded that a downward departure was warranted because Fleming's case fell outside the heartland of obstruction of justice cases. The district court declined, however, to decrease Fleming's offense level for acceptance of responsibility. On June 14, 1999, the district court sentenced Fleming to two concurrent fifteen-month terms of incarceration and two years of supervised release. On June 15, 1999, Fleming filed a notice of appeal of his conviction and sentence.

## II

### A

Although it is not mentioned in the statute, the Government must prove the existence of a pending judicial proceeding in a prosecution for a violation of § 1503. *See United States v. Fulbright*, 105 F.3d 443, 450 (9th Cir.1997) (citing *Pettibone v. United States*, 148 U.S. 197, 205–06, 13 S.Ct. 542, 37 L.Ed. 419 (1893)).

---

1. Section 1503 provides:

 (a) Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force or physical force, the maximum term of imprisonment which

 may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

 (b) The punishment for an offense under this section is—

 (1) in the case of a killing, the punishment provided in sections 1111 and 1112;

 (2) in the case of an attempted killing, or a case in which the offense was committed against a petit juror and in which a class A or B felony was charged, imprisonment for not more than 20 years, a fine under this title, or both; and

 (3) in any other case, imprisonment for not more than 10 years, a fine under this title, or both.

2. Section 2 provides:

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Fleming contends that the indictment failed to allege that there was a judicial proceeding pending at the time he lodged the lien with the court and delivered it to the Coyles' home. He argues that the indictment was therefore fatally flawed by a failure to allege an essential element of the charged offense. Fleming made the same argument in a pretrial motion seeking dismissal of the indictment. The district court denied the motion, reasoning that the indictment tracked the language of the statute under which Fleming was charged and set forth sufficient facts to cover the elements of the offense, including the requirement that a proceeding was pending. We review de novo the sufficiency of an indictment. *See United States v. Neill,* 166 F.3d 943, 947 (9th Cir.), *cert. denied,* 526 U.S. 1153, 119 S.Ct. 2037, 143 L.Ed.2d 1046 (1999).

■ "The essential purpose of an indictment is to give the defendant notice of the charge so that he can defend or plead his case adequately." *Id.* (quotations omitted). An indictment also safeguards the defendant's Fifth Amendment right to be prosecuted only on charges considered and facts found by a grand jury. *United States v. Du Bo,* 186 F.3d 1177, 1179 (9th Cir.1999). "[C]hallenges to minor or technical deficiencies, even where the errors are related to an element of the offense charged and even where the challenges are timely, are amenable to harmless error review." *Id.* at 1180. A "complete failure to charge an essential element of a crime, however, is by no means a mere technicality." *Id.* (quotations omitted). Here, the first count of the indictment charged that Fleming

did corruptly endeavor to influence, intimidate, and impede a judicial officer in a court of the United States, in the discharge of his duties, and did aid and abet the same, to wit: the defendant *attempted to file with the Clerks Office of the United States District Court for the Eastern District of California, at Fresno,* a $10,000,000 (ten million dollar)

"common-law" lien on real property owned by Robert E. Coyle and his spouse, in attempt to influence, intimidate and impede Senior United States District Court Judge Robert E. Coyle in the discharge of his duties, including but not limited to the judge's duties in the case of NICHOLAS VICTOR FLEMING V. STATE BAR OF CALIFORNIA, ... all in violation of Title 18, United States Code, Sections 1503 and 2.

(emphasis added).

■ The second count of the indictment was identical to the first except that in place of the passage underscored above were the words "did personally deliver to the residence of the Senior United States District Judge Robert E. Coyle." A bill of particulars later narrowed the charges of the indictment, stating that, "[b]ased on the current state of the evidence, the government contends that the defendant endeavored to interfere with only those judicial duties of Judge Coyle related to the pending case of *Nicholas Victor Fleming v. State Bar of California.*" "It is well settled, however, that a bill of particulars cannot cure an otherwise invalid indictment." *United States v. Rosi,* 27 F.3d 409, 414 (9th Cir.1994).

■ Both counts of the indictment charged Fleming with an "attempt to influence, intimidate and impede Senior United States District Court Judge Robert E. Coyle in the discharge of his duties ... in the case of NICHOLAS VICTOR FLEMING V. STATE BAR OF CALIFORNIA." Implicit in this charge is the grand jury's conclusion that Judge Coyle had duties in Fleming's pending proceeding against the State Bar of California. We conclude that the indictment was sufficient to put Fleming on notice of the charges against him and sufficient to ensure that he was prosecuted only on charges considered and facts found by a grand jury.

The lack of the words "pending proceeding" in the indictment was a technical defi-

ciency subject to harmless error review. *See Du Bo,* 186 F.3d at 1180–81. The district court instructed the jury that, in order to find Fleming guilty, it had to find that "a judicial proceeding was pending at the time of the alleged offense." We conclude that the failure to include in the indictment an explicit description of *Fleming v. State Bar of California* as a "pending proceeding" was, at worst, harmless error.

### B

■ Fleming maintains that his appeal in *Fleming v. State Bar of California* was so frivolous as to have no chance of resulting in a remand to Judge Coyle. He argues that the jury instruction defining a pending proceeding improperly stripped him of this defense. This court reviews de novo whether a jury instruction adequately covered a defendant's proffered defense. *See United States v. Hanousek,* 176 F.3d 1116, 1122 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 860, 145 L.Ed.2d 710 (2000).

The district court rejected Fleming's proposed jury instruction defining a pending proceeding. The instruction he proposed provided that "[a] proceeding is pending if the outcome of the proceeding could be affected by the alleged improper acts. A proceeding may be pending until a disposition is made of any direct appeal taken by the party claiming error that could result in a new trial." Over Fleming's objection, the district court instead instructed the jury that "[a] proceeding is pending until disposition is made of any direct appeal taken by the party claiming error, here that would be the defendant Nicholas Fleming, and that would result in a new trial."

■ In *Fulbright,* we held that a judicial proceeding terminates when the deadline for filing a timely notice of appeal has passed. *See Fulbright,* 105 F.3d at 450 (citing *United States v. Johnson,* 605 F.2d 729, 731 (4th Cir.1979) (concluding that a criminal action is "pending" until "disposition is made of any direct appeal taken by the defendant assigning error that could result in a new trial")). Fleming concedes as much. Fleming urges us to modify the definition of a pending proceeding to exclude any case in which the appeal filed is so frivolous that it could end in nothing but an affirmance. We decline to do so.

■ One need not succeed in obstructing justice to be convicted of violating § 1503: "an 'endeavor' suffices." *United States v. Aguilar,* 515 U.S. 593, 599, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). The crime of obstruction of justice under § 1503 is therefore analogous to inchoate offenses like attempt and conspiracy. Factual impossibility is not a defense to an inchoate offense. *See United States v. Brooklier,* 685 F.2d 1208, 1217 (9th Cir. 1982) ("[F]actual impossibility is no defense to an inchoate offense."); Wayne R. La Fave & Austin W. Scott, Jr., *Criminal Law* § 6.3(a)(2) (2d ed.1986) ("All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt."). Similarly, factual impossibility is not a defense to a charge under § 1503. *See Osborn v. United States,* 385 U.S. 323, 332–33, 87 S.Ct. 429 (1966) (rejecting impossibility defense as "inapplicable" to a charge of endeavoring to bribe a juror in violation of § 1503). To adopt Fleming's proposed definition of a pending proceeding would allow for a defense of impossibility on the basis of the inevitability of affirmance, a result that is irreconcilable with the rule in *Osborn.*

Fleming contends that the rule in *Osborn* is inapplicable here. He asserts that a pending appeal must objectively have some chance of success in order for the case to continue to be a pending proceeding. He further contends that the satisfaction of this requirement is a prerequisite to considering whether he endeavored to influence Judge Coyle. He cites as support portions of the following passage

of the Supreme Court's decision in *Aguilar:*

> The action taken by the accused must be with an intent to influence judicial or grand jury proceedings.... Some courts have phrased this showing as a "nexus" requirement-that the act must have a relationship in time, causation, or logic with the judicial proceedings. In other words, the endeavor must have the " 'natural and probable effect' " of interfering with the due administration of justice. This is not to say that the defendant's actions need be successful; an "endeavor" suffices. But as in *Pettibone,* if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.

*Aguilar,* 515 U.S. at 599, 115 S.Ct. 2357 (citations omitted).

Read in its entirety, this passage reveals that the requirement of a pending proceeding is intertwined with the intent element of the crime of endeavoring to obstruct justice. *See Pettibone,* 148 U.S. at 206–07, 13 S.Ct. 542 (holding that a person lacking knowledge of a pending proceeding necessarily lacks an intent to obstruct justice). Moreover, the Court in *Aguilar* rejected Fleming's interpretation of this passage when it addressed a concern raised by three dissenting members of the Court:

> Justice Scalia[, writing in dissent,] criticizes our treatment of the statutory language for reading the word "endeavor" out of it, inasmuch as it excludes defendants who have an evil purpose but use means that would "only unnaturally and improbably be successful." This criticism is unwarranted. Our reading of the statute gives the term "endeavor" a useful function to fulfill: It makes conduct punishable where the defendant acts with an intent to obstruct justice, and in a manner that is likely to obstruct justice, but is foiled in some way. Were a defendant with the requisite intent to lie to a subpoenaed witness who is ultimately not called to testify, or who testifies but does not transmit the defendant's version of the story, the defendant has endeavored to obstruct, but has not actually obstructed, justice. Under our approach, a jury could find such defendant guilty.

*Aguilar,* 515 U.S. at 601–02, 115 S.Ct. 2357 (citation omitted) (quoting *Aguilar,* 515 U.S. at 612, 115 S.Ct. 2357).

Here, Fleming's endeavor to influence Judge Coyle was foiled when a panel of this court affirmed the dismissal of *Fleming v. State Bar of California.* That the feebleness of Fleming's appeal may have made this outcome virtually inevitable does not change the fact that Fleming did all he could to keep the case alive. More importantly, it does not change the fact that Fleming believed there was some chance of a remand when he lodged the lien. One of the FBI agents who first interviewed Fleming testified at trial that Fleming described to him what he would do should his case be remanded to Judge Coyle. Fleming evidently did not recognize the objective frivolousness of his appeal until after he was charged with endeavoring to obstruct justice. We conclude that the district court did not err in refusing to adopt Fleming's proposed modification to the definition of a pending proceeding.

 Fleming further argues that the patent frivolousness of his appeal means that the evidence of a pending proceeding was insufficient as a matter of law to support the jury's verdict. The district court denied Fleming's motion for an acquittal at the close of the Government's case. Evidence is sufficient to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Deeb,* 175 F.3d 1163, 1168 (9th Cir.1999) (quotations omitted). Because the evidence showed that this court had not yet disposed of Fleming's appeal in *Fleming v. State Bar of California* when Fleming lodged the lien and delivered it to the

Coyles' residence, we conclude that the evidence supported a rational conclusion by the jury that Fleming was guilty of endeavoring to obstruct justice.

## III

 Fleming also asserts that the testimony of Judge Coyle and Mrs. Coyle regarding their reaction to Fleming's actions should have been excluded as irrelevant or, in the alternative, as unduly prejudicial. This court reviews evidentiary rulings for abuse of discretion. *See United States v. Hankey,* 203 F.3d 1160, 1166–67 (9th Cir.2000).

After holding oral argument on this issue, Judge Whaley denied Fleming's pretrial motion in limine, reasoning that "Judge Coyle's reactions to receiving the lien in *Fleming v. State Bar of California* are relevant to the issue of whether the lien filed by Defendant had the natural and probable effect of influencing, intimidating, or impeding a judge in the execution of his duties." Fleming unsuccessfully renewed his objection at trial.

At trial, Mrs. Coyle testified that receiving the lien "was a little upsetting [because] [i]t appeared to be a lien on practically everything we owned." When asked if she had "become concerned" after receiving the lien, Mrs. Coyle responded affirmatively. Judge Coyle testified that, upon seeing a faxed copy of the lien, he became "very concerned" because he knew "what trouble it is to get a lien off your property." He also testified that the delivery of the lien to his home made him feel "concerned that people knew my address and how to get a hold of me." He testified that his wife, Mrs. Coyle, was "shook up" when he spoke to her shortly after she received the lien.

## A

 The Federal Rules of Evidence define the term "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Fleming's intent in lodging the lien and delivering it to the Coyles' residence is a fact of consequence to the determination of whether he violated § 1503. *See Aguilar,* 515 U.S. at 599, 115 S.Ct. 2357 ("The action taken by the accused must be with an intent to influence judicial or grand jury proceedings. . . . "). Direct evidence of intent is not required. To establish the requisite intent, the Government may prove that Fleming's acts had "the natural and probable effect of interfering with the due administration of justice." *Id.* (quotations omitted).

That Judge Coyle and Mrs. Coyle were upset and concerned by Fleming's actions does not necessarily mean that such a reaction was, in fact, a natural and probable effect of Fleming's actions. The way they reacted, however, does tend to make it more likely that such a reaction was a natural and probable effect of Fleming's actions. That is all that is required for evidence to be relevant. *See* Fed.R.Evid. 401. We therefore conclude the district court did not abuse its discretion in finding that their testimony was relevant.

## B

 Fleming argues that the "prestige, dignity and authority" of Judge Coyle and the "sympathy and sense of vulnerability" of Mrs. Coyle created a risk of undue prejudice to Fleming and that the district court should therefore have excluded their testimony about the impact of Fleming's actions under Federal Rule of Evidence 403. "A district court's decision to exclude or admit evidence under [Rule] 403 is reviewed with 'considerable deference.'" *See Hankey,* 203 F.3d at 1167.

 Rule 403 provides that "relevant . . . evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury...." Fed.R.Evid. 403. "Rule 403 favors admissibility, while concomitantly providing the means of keeping distracting evidence out of the trial." *Hankey*, 203 F.3d at 1172. Assessing whether evidence should be excluded under Rule 403 requires a comparison of the probative value of the evidence to the articulated reasons for exclusion. *See id.*

 The Coyles' testimony regarding the effect of Fleming's actions on them was probative of Fleming's intent, an element of the charged offense. Their testimony regarding the actual effect of Fleming's actions may well have been the only evidence the Government could present to shed light on the intended effect of Fleming's actions. Whether there are other means of introducing evidence to support the point to which a witness would testify is a factor in assessing the probative value of that witness's testimony. *See Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir.1996).

Fleming fails to articulate any improper use or inferences the testimony of Judge Coyle and Mrs. Coyle may have supported. He does not explain how their testimony may have misled or confused the jury. Without more, the fact that Judge Coyle and Mrs. Coyle were credible, sympathetic, or authoritative witnesses does not mandate a conclusion that their testimony would unduly prejudice Fleming. *See United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1140–41 (9th Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 582, 145 L.Ed.2d 484 (1999) (concluding that, where a judge had first hand knowledge of matters in issue, his testimony was relevant and not improperly prejudicial); *cf. Trevino*, 99 F.3d at 922 (affirming the exclusion under Rule 403 of a child plaintiff's testimony in a § 1983 action against police officers who killed her father because the girl would have been a highly sympathetic witness, because she was not born at the time of her father's death and so knew nothing about the circumstances, and because she was able to introduce expert testimony regarding her distress at being deprived of her father, the one issue about which she would have testified). We conclude that the district court did not abuse its discretion in concluding that the probative value of the Coyles' testimony was not substantially outweighed by the danger of undue prejudice.

## IV

 The United States Sentencing Guidelines Manual provides for a two to three point reduction in offense level for a defendant who "clearly demonstrates acceptance of responsibility for his offense." U.S. Sentencing Guidelines Manual § 3E1.1. Fleming contends that the district court erred in concluding that he was ineligible for this reduction in offense level. We review for clear error a district court's decision to deny a reduction for acceptance of responsibility. *See United States v. Fisher*, 137 F.3d 1158, 1167 (9th Cir.1998).

At the sentencing hearing, the district court gave Fleming an opportunity to speak. Fleming said,

> Well, your Honor, I'm very sorry for what happened. When I had—I had no intention of this, of doing what I got convicted for. I have—that was the furtherest thing from my mind.... And I never expected to be accused of impeding justice because the case had been dismissed....
>
> And I'm just sorry that I didn't use wisdom, a little bit more wisdom. I'm sorry that the fact that this whole thing took place, because this—I was just expecting to get an order from the judge saying you can't do this, and let it go with that....
>
> I didn't intend to hurt the judge in any way because there was no decision and there's no decision to influence, he had already made his decision.

The district court was unmoved and said,

> Mr. Fleming, I don't believe, or at least I disagree with some of the things you've said. I think the reason you filed that lien was to influence a judge. I

can't think of any other reason to do it but to influence the judge in what the judge ultimately decided. And I think for that reason the request to give acceptance of responsibility is not appropriate.

 Fleming admitted lodging the lien and causing it to be delivered to the Coyle home. He also apologized for what he did. Even after his conviction, however, Fleming maintained that he acted with an empty head but a pure heart. In stating that he did not intend to influence Judge Coyle, Fleming denied an element of the offense of which he was convicted. We have held that, where a defendant cooperated with the authorities after his arrest and called no witnesses at trial but refused to admit the intent element of his offense at the sentencing hearing, the district court did not clearly err in concluding that he did not accept responsibility for his offense. *See United States v. Mohrbacher*, 182 F.3d 1041, 1052–53 (9th Cir.1999).

The judgment of conviction and the sentencing decision are AFFIRMED.