NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 5 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  16-50111 |
| Plaintiff-Appellee, | D.C. No.  2:15-cr-00326-R-1 |
| v. | |
| BRIDGETTE LENET JACKSON, AKA Bridgette Levet Jackson, | |
| Defendant-Appellant. | MEMORANDUM[*] |

Appeal from the United States District Court
For the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted December 8, 2017
Pasadena, California

Before:   KELLY,[**] CALLAHAN, and BEA, Circuit Judges.

Defendant-Appellant Bridgette Jackson ("Jackson") was convicted,

after a jury trial, of conspiracy to possess and aiding and abetting in the

possession of fifteen or more unauthorized access devices and aggravated

identity theft.  Jackson was sentenced to 60 months' imprisonment.  The

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the
U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

scheme involved the theft of nursing home patient records; this information was then used to file fraudulent tax returns and obtain refunds. Jackson now appeals from the district court's: (1) denial of her request to change counsel without affording her a hearing; (2) precluding her from questioning witnesses about the thoroughness of the underlying investigation; (3) loss calculation; and (4) denial of a two-level reduction for acceptance of responsibility. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

A. **Request for New Counsel**

We review the district court's denial of such a request for an abuse of discretion, and we find none. In *United States v. Smith*, 282 F.3d 758, 764 (9th Cir. 2002), we stated that "the failure to conduct a hearing is not *by itself* an abuse of discretion." Jackson's request was not accompanied by any facts to suggest a conflict with her counsel. *See United States v. Cassel*, 408 F.3d 622, 637 (9th Cir. 2005) (noting this as a factor for evaluating improper denial of counsel). In fact, two days prior to making the request, Jackson filed a stipulation to continue the trial date, in which she stated that she had carefully discussed the stipulation with counsel and also that she wanted to ensure continuity of counsel. Moreover, no facts suggest that the attorney-client relationship resulted in a "constructive denial of counsel."

2

*See United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010).

Jackson even continued to use the *same* counsel in a separate conspiracy

case, without ever indicating her dissatisfaction with counsel. We therefore

find no abuse of discretion in the district court's denial of Jackson's request

for new counsel.

### B. Police Investigation Defense

The district court did not violate Jackson's due process rights when it

precluded certain testimony concerning the police investigation. Whether

the district court violated a defendant's due process rights is reviewed de

novo. *United States v. Waters*, 627 F.3d 345, 352 (9th Cir. 2010). In

considering whether the exclusion of evidence violates a defendant's due

process rights, "this court considers the 'probative value of the evidence on

the central issue.'" *United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th

Cir. 2007) (quoting *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).

"[T]rial judges retain wide latitude to limit reasonably a criminal defendant's

right to cross-examine a witness based on concerns about, among other

things . . . interrogation that is . . . only marginally relevant." Holley v.

Yarborough, 568 F.3d 1091, 1098 (9th Cir. 2009).

Defense counsel's line of questioning was not an attempt to reveal

inconsistencies or biases by the agents. Instead, it was an attempt to raise

questions as to the charging decisions. The defense counsel's opening statement identified several co-conspirators, noting that the Government had not charged any of them. The Government had charged only Jackson. We find that counsel never explained to the trial judge *why* he wanted to call certain governmental agents other than to "present a complete defense." Accordingly, probing further into the police investigation was not relevant under Federal Rule of Evidence 403. *See Cruz-Escoto*, 476 F.3d at 1088.

C. **The Loss Amount**

The district court correctly adopted the probation office's loss calculation as to the unauthorized access devices, which we review for clear error. *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1154 (9th Cir. 2012). The $500 per unauthorized device standard applies to debit cards or account numbers whose usability has not been proven. "An 'unauthorized access device' must be an 'access device,' which itself must be capable of obtaining 'money, goods, services, or any other thing of value.'" *United States v. Onyesoh*, 674 F.3d 1157, 1159 (9th Cir. 2012) (quoting 18 U.S.C. § 1029(e)(1), (e)(3)). *Onyesoh* makes clear that the device must be *capable* of obtaining value; it need not have obtained value or even have been used previously.

4

Moreover, the guidelines are not ambiguous and the rule of lenity does not apply. The plain language of the guidelines indicates there is a floor on each device: the greater of the loss resulting from the unauthorized charges *or* $500. U.S.S.G. § 2B1.1 cmt. n.3(F)(i). Although it sets a floor, it does not limit losses to devices actually used.

Finally, a Social Security card is an access device. The plain language of the statute is clear. To be an access device, a device must be a "means of account access that can be used, alone or in conjunction with another access device" to obtain a thing of value. 18 U.S.C. § 1029(e)(1). Jackson used a means of account access (the social security numbers and cards) to obtain things of value (the fraudulent tax dollars). We therefore affirm the district court on the loss-calculation issue.

### D.     Two-Level Downward Adjustment

The district court was not required to grant Jackson a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. We review for clear error. *United States v. Fleming*, 215 F.3d 930, 939 (9th Cir. 2000). "[A] defendant who puts the government to its proof may still be eligible for a downward adjustment if, and only if, he has 'otherwise demonstrated sincere contrition.'" *United States v. Ramos-Medina*, 706 F.3d

5

932, 940 (9th Cir. 2013) (quoting *United States v. Cortes*, 299 F.3d 1030, 1038 (9th Cir. 2002)).

First, Jackson decided to go to trial, which weighs against accepting responsibility. *See id.* Second, although Jackson cooperated with authorities, she initially withheld certain information and minimized her own role in the scheme. Third, a few months following her final interview with authorities in April 2013, Jackson engaged in a completely separate fraudulent scheme. Finally, even during sentencing, Jackson equivocated in her acceptance of responsibility. *See United States v. Osinger*, 753 F.3d 939, 949 (9th Cir. 2014). Accordingly, the district court's decision to deny a two-level reduction for acceptance of responsibility was not clearly erroneous.

**AFFIRMED.**